PROPRIETORS OF THE CANAL BRIDGE *vs.* TRUSTEES OF THE METHODIST RELIGIOUS SOCIETY IN CAMBRIDGE.

THE SAME *vs.* TRUSTEES OF THE WESLEYAN ACADEMY.

The proprietors of Canal Bridge granted to B. and others, by deed, a lot of land, in fee, to be held in trust for S. and others, and their associates, "for the purpose of the public worship of God, and the erection, on said premies granted, of a church or meeting-house for said worship, as also a house for a clergyman, and a school house:" The following conditions were inserted in the deed: "And this grant hereby made is upon the express condition that the grantees, or *cestuis que trust,* or some of them, shall build and finish, within two years from the 9th day of November 1822, on the lot hereby conveyed, a church or meeting-house for the public worship of God, and shall build and finish, within three years from the said ninth day of November, a suitable dwelling-house for the clergyman, and a school house, all on the lot hereby conveyed; and in case the said church or meeting-house, and parsonage house and school house, shall not be built on said lot, and finished within the respective times above mentioned, then the land hereby granted, with its appurtenances, is to revert to said Proprietors of Canal Bridge: And this grant is upon this further condition, that the land hereby conveyed shall be forever hereafter appropriated to the maintenance and support of the public worship of God, as hereinbefore specified, and to no other uses or purposes whatever; otherwise, the same to revert to said corporation of the Canal Bridge, as above mentioned:" Afterwards, the grantors extended the time within which the school house might be built: B. and others conveyed said lot to S. and others, in trust for a religious society that had been incorporated, to be held on the same trusts and conditions that were expressed in the deed of the original grantors, made to B. and others: The meeting-house, parsonage house and school house were built on said lot, and were finished, to the satisfaction of the original grantors, within the times mentioned in their deed, and afterwards extended by them: After wards, another house, connected with the school house, was built on said lot, for the use of the preceptor of the school; a vestry and two shops were made in the basement of the meeting-house, and the shops leased for secular business; the land on which the parsonage house was built was mortgaged for a debt incurred in building on the whole lot; the land on which the school house and preceptor's house were built was leased for a long term to an incorporated academy, and said academy mortgaged the same: The original grantors entered upon the land originally granted by them to B. and others, for breaches of the conditions in their deed of conveyance, and brought writs of entry to recover the whole land as forfeited

by such breaches. *Held,* that the second condition in said original deed was repugnant to the previous parts of the deed, and was void; and that the actions could not be maintained.

THESE were writs of entry, brought in May 1844. In the first, the demandants sought to recover a piece of land in East Cambridge, containing 8420 square feet; and in the second, an adjoining piece of land, (with the buildings and appurtenances,) containing 11,580 square feet; both forming a part of lot No. 118 on a plan of lands at East Cambridge, made by Stephen P. Fuller, and recorded in the registry of deeds in Middlesex county, Book 243, folio 544.

At the return term, the demandants, by order of the court, filed a specification of the grounds of their claim, in both actions, in the words following:  " The demandants in these suits seek to recover the demanded premises, on the ground of an alleged breach of the conditions in the deed (dated January 14th 1823) by which the demandants conveyed the premises to Amos Binney and others; said deed being recorded in Book 246, page 184.   Breaches relied on by the demandants are the following:   1.  That the parsonage house, school house and meeting-house, mentioned in said deed, were not erected and finished within the time limited by the deed. 2. That the parsonage house was not erected on the land granted by the demandants, as required by the deed.    3.  That there has been erected, on the demanded premises, a dwelling-house, other than the parsonage, and not authorized by, but in breach of, the condition of said deed.    4.  That the basement story under said meeting-house has been appropriated, by the tenants, for a tailor's shop, provision store, &c. 5.  That the tenants, on or about January 1st 1828, leased to the Trustees of the Wesleyan Academy a part of the lands conveyed by the demandants, by their deed aforesaid, (the part on which the school house and a dwelling-house stand,) for the term of 999 years, at a nominal rent, and have ever since the date of said lease, permitted said lessees to have possession of, and to appropriate, the demised premises and the rents and income thereof to uses and purposes other than the

support of the public worship of God, as specified in said deed. 6. That the tenants have heretofore conveyed a part of said premises, with the parsonage house thereon, in fee and in mortgage, to Amos Binney, now of Boston, to secure the payment of $1200. 7. That said lessees have heretofore conveyed that part of the premies, leased to them in fee and in mortgage, to John Emory, Esq. of New York, to secure the payment of $2500."

By a like order of the court, the tenants, in both actions, filed specifications of the grounds of their defence. The specification of the Trustees of the Methodist Religious Society, tenants in the first action, was as follows: " The tenants in this action will require the demandants to make out their title fully and affirmatively, and will set up in defence all such matters and things as, at common law or by statute, may be given in evidence under the general issue, and will rely, in particular, upon the following matters of defence: 1. That there has been a complete and full performance of all the conditions of the grant to Amos Binney and others, by the demandants. 2. That there have been no acts done, amounting to a breach or violation of any condition of the said grant, as alleged by the demandants. 3. That the time for the performance of the conditions of the said grant, as by the terms thereof limited, was extended by the demandants, and the said conditions performed, either within said time or the time originally limited. 4. That the demandants have accepted the acts and doings of the grantees, and those claiming under them, as a full and satisfactory performance of the conditions of said grant, and have exonerated and discharged them therefrom, and from any further performance thereof. 5. That the conditions, in said deed limited, were not the conditions of the grant, as declared and limited by the votes of the demandants, (granting the demanded premises, as prayed for by the petition of Atherton H. Stevens and others,) and upon which said grant was made, and which were directed by the demandants to be limited in the deed thereof; but that the same were inserted in said deed without the knowledge or authority, and

contrary to the direction, of the demandants, and do not in fact constitute the conditions on which the demanded premises are held or were granted. 6. That the several acts and things alleged by the demandants to have been done, and to be breaches of the said grant, have not been in fact done, or, if done, do not constitute any such breach or breaches as will work a forfeiture of the demanded premises. 7. That neither the demanded premises, nor any part thereof, nor the rents and income thereof, have been appropriated to uses and purposes other than those limited by the terms of said grant, and contemplated by the demandants. 8. That the lease and mortgages, alleged by the demandants to have been made, and the alleged appropriation of the basement story of the meeting-house to a tailor's shop, provision store, &c. if in fact made and done, were made and done in performance of, and to obtain the means to perform, the conditions of the said grant. 9. That the parsonage house was in fact erected on the premises granted by the demandants, or, if not wholly, so far, at least, as to be a substantial performance of the conditions of the said grant; or, if not, the same has been accepted as a performance, and all objection thereto waived and relinquished by the demandants. 10. That the last condition in said deed is repugnant to the said grant, and to the conditions in said deed previously limited, and to the uses and purposes therein declared."

The specification of the Trustees of the Wesleyan Academy, tenants in the second action, was thus: "The said trustees will insist that this action cannot be maintained against them, because they claim, and ever have claimed, to have nothing in the demanded premises, but only a term for years, by virtue of indentures of lease, dated January 1st 1828, whereby the Trustees of the Methodist Religious Society in Cambridge, then and now tenants of the freehold, conveyed the premises therein described to the said supposed tenants for a term of 999 years, which indentures were made for a full and adequate consideration, paid to said trustees of said religious society, or those under whom they

claim, and which was by them applied to the performance of the conditions of the grant of the demanded premises to Amos Binney and others by the demandants, and to the uses and purposes thereof; the fee and freehold then, ever since, and now, remaining and being in the said Trustees of the Methodist Religious Society in Cambridge. And for a further specification of defence, the said supposed tenants adopt that filed in the case of the Proprietors of the Canal Bridge against the Trustees of the said Methodist Religious Society."

The tenants, in both actions, closed their specifications with a notice that if judgment should be against them, they should claim compensation for all buildings and improvements made or erected by them, or any under whom they claimed, upon the demanded premises, and to have the same ascertained and assessed by the jury, according to the provisions of *St.* 1807, *c.* 75, and the Rev. Sts. *c.* 101.

The trial was before *Hubbard*, J. who made a report thereof as follows : The demandants gave in evidence the following deeds : 1st. Their deed of January 14th 1843, for the alleged consideration of five dollars to Amos Binney and others, mentioned in the specifications of the parties. The *habendum* of this deed was as follows: " To have and to hold the above granted premises to the said Binney, [and four others named,] their heirs and assigns, to the several uses, and upon the several trusts, and subject to the several conditions, declarations and agreements hereinafter mentioned : To wit, in trust for Atherton H. Stevens, [and twenty eight others named,] their heirs and assigns, together with such other persons as may associate with them, for the purpose of the public worship of God, and the erection, on said premises granted, of a church or meeting-house for said worship ; as also a house for a clergyman, and a school house. And this grant hereby made is upon the express condition that the grantees or *cestuis que trust,* or some of them, shall build and finish, within two years from the ninth day of November last," (1822,) " on the lot hereby conveyed, a church or meet-ing-house for the public worship of God, and shall also build

and finish, within three years from the said ninth day of November, a suitable dwelling-house for the clergyman, and a school house, all on the lot hereby conveyed. And in case the said church or meeting-house, and parsonage house and school house, shall not be built on said lot, and finished within the respective periods above mentioned, then the land hereby granted, with its appurtenances, is to revert to said Proprietors of the Canal Bridge. And this grant is upon this further condition, that the land hereby conveyed shall be forever hereafter appropriated to the maintenance and support of the public worship of God, as herein before specified, and to no other uses or purposes whatever; otherwise, the same to revert to said corporation of the Canal Bridge, as above mentioned." The boundaries of the land conveyed by this deed are stated in the opinion of the court.

2d. A deed of the same premises, from Amos Binney and others, grantees in the deed last mentioned, to the Trustees of the Methodist Religious Society in Cambridge, dated July 1st 1824, conveying said premises to them, to have and to hold the same, to the same uses, and upon the same trusts and conditions, that were expressed in the deed of January 14th 1823 from the demandants to said Binney and others, except that the church or meeting-house, to be erected on the premises, was to be " for the worship of God according to the discipline of the Methodist Episcopal Church in the United States."

3d. A mortgage deed, made to Amos Binney by the Trustees of the Methodist Religious Society aforesaid, dated October 1st 1845, conveying a part of the land described in the two last mentioned deeds, viz. the land on which the parsonage house was built, to secure the payment of $1219·21, in five years, with interest payable semiannually.

4th. An indenture of lease for the term of 999 years, from said Trustees of the Methodist Religious Society in Cambridge to the Trustees of the Wesleyan Academy, of the premises demanded in the second of these actions. This lease reserved one dollar per annum, as rent, and was " upon

the express condition, that no building " should " be erected on any part of said land, nor any business, trade or occupation transacted or carried on thereupon, or in any building thereupon, which " should " in any wise interfere with or interrupt the peaceable and quiet enjoyment of the said church and parsonage house " contiguous to the demised premises, " or be in any wise a nuisance to them who " should " lawfully occupy and use the same," &c.

5th. A mortgage deed, from said Trustees of the Wesleyan Academy, of the premises described in the indenture of lease to them, above mentioned, to John Emory, acknowledged on the 14th of November 1830, to secure payment of $2500 in four years, with semiannual interest, payable in New York.

The demandants abandoned any claim under the first and second breaches of condition alleged in their specification, and proceeded to give evidence of the following facts; some of which were not denied by the tenants: 1. That a brick dwelling-house, two stories high, was erected and finished before November 1st 1826, by the tenants in the first of these actions, on that part of the premises conveyed by the demandants to Amos Binney and others by the deed of January 14th 1823, and which was afterwards leased to the Trustees of the Wesleyan Academy, as above stated: That the house was built at the same time and in connexion with the school house, and forms a part of 'the school house block,' so called. 2. That the Trustees of the Wesleyan Academy have, ever since the date of the lease aforesaid to them, had possession of the premises described in said lease and in the demandants' writ against them, and have received the rents and income thereof, and appropriated the same to the uses and purposes of the academy at Wilbraham: That the school house has always been, and now is, kept up and maintained by said lessees, and rented by them at a low rent, sometimes for a high school, and sometimes for a private and primary school. 3. That the basement under the meeting-house was rented by the tenants in the first of these actions, for the storage of glass and other merchandize, from 1824 to 1842:

29 *

That during that period, the embankment, on the north side of the meeting-house, came above and covered the rough stone foundation of said house, and sloped off gradually towards the sidewalk in Cambridge Street : That, in 1842, this embankment was removed, to the depth of about four feet, leaving said foundation, towards said street, uncovered ; and windows and doors were inserted in the basement wall, and the basement was partitioned off into three apartments. which were finished ; one for a vestry, one for a tailor's shop and one for a provision store : That the vestry has been ever since occupied, as such, by the said Methodist church and society, and the store and shop have been rented by the trustees of said society, and the rents thereof, and of the basement while rented for the storage of glass, &c. have been applied to the payment of the debts of the society, incurred in erecting the buildings, for repairs and for preaching, and to the support of public worship : That on the 25th of April 1844, the demandants made an actual entry on each of the parcels of land demanded in said actions, for breach of the conditions of their said deed of January 14th 1823, and for the purpose of obtaining seizin and possession thereof, upon the ground of an alleged forfeiture.

The tenants then gave in evidence the following acts of the legislature :    St. 1809, c. 85, incorporating a company by the name of the Lechmere Point Corporation, and St. 1822, c. 19, in addition thereto ; St. 1823, c. 46, incorporating the Trustees of the Methodist Religious Society in Cambridge, and St. 1823, c. 81, incorporating the Trustees of the Wesleyan Academy :    Also the records of said Lechmere Point Corporation, of September 21st and October 31st 1822.    From these records it appeared that at a meeting of the directors of said company, on the 21st of September 1822, it was voted "that Messrs. Binney, Rogers and Terry be a committee to consult and report upon the petition of sundry persons for a lot of land for a meeting-house ; " and that, on the 31st of October following, at a meeting of said directors, it was voted, " that the petition of sundry persons for land for a

meeting-house be referred to the Proprietors of the Cana.
Bridge."

The tenants then put into the case a deed of the demanded
premises, made by the Lechmere Point Corporation to the de-
mandants, (who were incorporated by *Sts.* 1806, *c.* 88, and
1807, *c.* 61,) dated October 21st 1822: Also the following
extracts from the records of the demandants, to wit, *first,* a
report read and accepted at a proprietors' meeting held on the
9th of November 1822, in these words: "The committee,
to whom was referred the petition of Atherton H. Stevens
and others, asking a donation of a lot of land for the erection
of a house for public worship and other purposes, have seen
the petitioners, and, from a communication with them, learn
that they wish to erect a house for the minister and a school
Impressed with the utility of such institutions, and considering
that the property generally will be enhanced in value, the
committee report, that in their opinion it is expedient to grant
them a lot of land, one hundred feet square, on the corner of
Cambridge and South Third Streets, provided a church shall
be erected and finished in the course of two years. And one
other lot of one hundred feet square, on the corner of Otis and
South Third Streets, provided that a suitable dwelling-house
for the clergyman and a school house shall be erected and
finished within three years from the present period. That
the land shall be conveyed to trustees appointed by the pe-
titioners, and approved by the directors; and in case of non-
compliance with the conditions above named, said lots to
revert to Canal Bridge." *Second,* a record of the proceedings
at a directors' meeting, held on the 10th of January 1823,
when the trustees, chosen by the petitioners for a lot of land,
to receive a conveyance thereof, were approved, and an order
passed, that a deed should be made to said trustees, (Amos
Binney and others,) and that a stockholders' meeting should
be called on the 14th of January 1823, to enable the president
to sign said deed. *Third,* a vote, at a proprietors' meeting
held on said 14th of January, "that the president be author-
.z?i to sign the deed to the trustees mentioned in the vote of

the directors, of January 10th instant, of a certain lot of land at Lechmere Point, for the purpose of building a meeting-house, according to a vote of the proprietors, of November 9th 1822, and the report of the committee and the vote thereon." *Fourth*, the following vote passed at a proprietors' meeting held on the 25th of April 1826: " On the representation of the directors, that they had granted to Colonel Binney an extension of time, for the purpose of erecting a school house on the lot granted to the Trustees of the Methodist Society at Lechmere Point, for the erection of a meeting-house and school house, as appears by vote of proprietors January 14th 1823 ; the meeting-house and dwelling-house being completed: It was voted, that the extension granted by the directors be confirmed, and that the time for the completion of said school house be extended to the first of November next ; the said school house to be built of brick." *Fifth*, the appointment of a committee, by the directors, on the 24th of October 1826, to ascertain whether the conditions of the deed of January 14th 1823 had been complied with ; and a report of said committee (William Payne and Ebenezer Francis) in these words: " Boston, November 16th 1826. The undersigned, a committee appointed by the directors of Canal Bridge, on the 24th ult., have examined the buildings erected on land granted to Amos Binney and others, trustees, and report: That a meeting-house, parsonage house and school house have been erected on said land, in conformity to the conditions made in said grants ; and that the same have been built with brick, in a substantial manner."

The tenants also gave in evidence the records of the Trustees of the Methodist Religious Society in Cambridge, accepting their act of incorporation on the 21st of July 1823 ; passing by-laws on the 28th of July 1823 ; accepting, on the 9th of August 1823, the proposal of Amos Binney to build a meeting-house, and choosing a committee to obtain a plan, in conjunction with Binney, and adopt measures for finishing the house ; authorizing Binney, on the 27th of May 1824, to lease the cellar under the meeting-house ; voting, on the 2d of June

1826, to mortgage the land, granted to Amos Binney and others, to said Binney, or to any person or persons who would advance the funds necessary to erect the buildings required by said grant of the land, and to give a lease of said buildings, as payment of the interest of the money thus advanced; and also (among other proceedings and votes) a vote, passed on the 28th of August 1834, authorizing the secretary and treasurer to execute a mortgage deed of the parsonage house and lot to the representatives of the estate of Amos Binney (deceased) for the payment of the amount due to said estate.

The tenants also gave in evidence a discharge of the mort- gage made, as above mentioned, to John Emory.

To the admission of all the foregoing documentary evidence the demandants objected; and the tenants thereupon offered to prove all the facts therein set forth and contained, by the testimony of witnesses. Whereupon the demandants admitted the truth of said facts, but denied that said facts were admissible or competent to be proved in this case. And it was thereupon agreed, that all the facts contained in said documentary evidence, so far as legally admissible and competent, and no further, should be taken to be proved in this case.

It further appeared, on the part of the tenants, that a brick meeting-house was erected on the lands granted to Amos Binney and others by the demandants, as above stated, in the spring of 1824, and was dedicated on the 21st of July 1824, and has ever since been used, as a meeting-house, by the Methodist Society in Cambridge; that constant religious worship has been maintained therein; and that said house was constructed over a large cellar or basement, which has been occupied, as before stated.

It also appeared, that the parsonage house, mentioned in the aforesaid deed to Amos Binney and others, was erected on part of the demanded premises, prior to April 25th 1825, and has ever since been appropriated by the tenants in the first of these actions for the use of their minister.

It further appeared, that the money, to pay for the erection

of the several buildings aforesaid, was advanced to the Trus-
tees of the said Methodist Religious Society, by Amos Binney,
and that he was settled with by said society, in the manner
stated in said society's records :   That no buildings, besides
those above mentioned, have been placed on the demanded
premises, and that all the buildings now remain on the land,
precisely as they were originally made, and as they were on
the 16th of November 1826, when visited by the committee
of the demandants; except that the cellar or basement of the
meeting-house has been finished off into a vestry, &c. as
above stated.

It was agreed by the parties, at the trial, that the claims of
the respective tenants for compensation for buildings and im-
provements should be postponed, without prejudice to either
party, until the court should determine the question of law
arising on this report of the facts.

The cases were taken from the jury, under an agreement
that judgment should be rendered upon nonsuit or default, or
that the cases should be put to a jury, as the whole court
should direct.

These cases were argued at the last October term.

*Buttrick*, for the demandants.   The second condition in
the deed to Binney and others, that the land should be forever
appropriated to the maintenance and support of public wor-
ship, and to no other uses or purposes, has been violated by
the tenants.   If so, then a writ of entry is the proper action
to be brought by the grantors.   *Hayden* v. *Inhabitants of
Stoughton*, 5 Pick. 528.   The tenants will insist, however,
that the condition has been waived by the demandants.   But
mere indulgence does not destroy the effect of a condition.
See *Gray* v. *Blanchard*, 8 Pick. 284.   *Jackson* v. *Crysler*,
1 Johns. Cas. 125.   *Picket* v. *Dowdall*, 2 Wash. 106.

The lease to the trustees of the Wesleyan Academy was
one breach of the condition of the deed.   That lease was in
effect an alienation of the land in fee, for a nominal sum,
besides being a diversion of the property from the uses for
which it was granted.   See Rev. Sts. c. 97, § 33.   *Attorney*

*General* v. *South Sea Co.* 4 Beavan, 453. *Attorney General* v. *Brettingham*, 3 Beavan, 91. *Attorney General* v. *Green*, 5 Ves. 452.

The vote of the demandants to give the deed cannot affect the construction of the deed that was given. The deed must be its own interpreter. 1 Greenl. on Ev. §§ 275 – 281. *Child* v. *Wells*, 13 Pick. 121.

The last condition in the deed is not void, as creating a perpetuity. *Scatterwood* v. *Edge*, 1 Salk. 229, and 12 Mod. 278, 287. 2 Bl. Com. 174. It is unimportant who is the owner of the fee. Binney has already conveyed the land to the Methodist Religious Society ; and it is the appropriation only that is restricted by the deed. See *Second Congregational Society in North Bridgewater* v. *Waring*, 24 Pick. 304. But if it be a perpetuity, it is not contrary to the policy of the law. *Bartlet* v. *King*, 12 Mass. 537, 540. *Gass* v. *Wilhite*, 2 Dana, 170. *Griffin* v. *Graham*, 1 Hawks, 96. *Inglis* v. *Trustees of Sailors' Snug Harbor*, 3 Pet. 99. *Going* v. *Emery*, 16 Pick. 107. *M'Cartee* v. *Orphan Asylum Society*, 9 Cow. 437. *Austin* v. *Cambridgeport Parish*, 21 Pick. 215. This condition would not be void in England on the ground of its being a perpetuity. *Porter's case*, 2 Co 22 – 26. *Magdalen College case*, 11 Co. 71. Shep Touch. 130. Dr. & Stud. (16th ed.) 212.

*Fletcher & A. B. Merrill*, for the tenants. The conditions in the deed are different from the vote under which the deed was ordered to be made ; and if the vote cannot vary or explain those conditions, yet if the terms of those conditions are ambiguous or contradictory, the court will expound them most beneficially for the grantees, and most strongly against the grantors. Plowd. 156, 171, 287. 24 Amer. Jurist, 11. *Adams* v. *Frothingham*, 3 Mass. 361. And this rule is specially applicable to conditions that go to defeat an estate. 2 Crabb on Real Property, § 2153. The understanding of the grantors, as manifested by contemporaneous and long continued acts and omissions, is also rightly resorted to in the interpretation of deeds. *Jackson* v. *Gardner*, 8 Johns.

406. *Stone* v. *Clark*, 1 Met. 378. *Crafts* v. *Hibbard*, 4 Met. 452. 1 Greenl. on Ev. §§ 286 – 288.

The second condition in the deed is void. *First*, because it is repugnant to the grant, and to the incidents of the estate granted. Co. Lit. 206 *b*. Com. Dig. Condition, D. 4. *Moore* v. *Savil*, 2 Leon. 132. It is manifestly repugnant to the grant, unless it be construed to refer only to the land granted for a meeting-house. But such are not its terms. *Secondly*, because it attempts to create a perpetuity against the rules of law. Lewis on the Law of Perpetuity, (Amer. ed.) 49, 138, 139, 386, 396, 397. 1 Jarman on Wills, 219, 220.

The tenants have performed the first condition in the deed, in every particular; or, if they have not, the demandants have accepted the performance so far as it has been made, and have waived any further or different performance. *Jackson* v. *Crysler*, 1 Johns. Cas. 125. This acceptance shows how the demandants construed their own grant; and this, as already shown by authorities, is a proper source of interpretation.

The building of the house, which was not required to be built, was connected with the school house, for the preceptor, and is in furtherance of the interests of the school, which was one of the purposes of the grantors, as clearly as the support of public worship. See *Jackson* v. *Pike*, 9 Cow. 69.

The lease to the Trustees of the Wesleyan Academy is no ground of forfeiture. Owners of the fee may make leases for as long terms as they please. This is an incident to a fee simple estate. The land leased was not that on which the meeting-house was erected; and the rents have not been misapplied. The owner of a fee may also very clearly make mortgages of his estate. After the tenants had performed the conditions of their grant, there was no restriction on alienation by them. *Simonds* v. *Simonds*, 3 Met. 558.

SHAW, C. J. Several questions have been raised and elaborately discussed in the present cases, upon which the court have found no occasion to express any opinion; the decision of the cases being, in our opinion, to be determined by

the construction of the deed given to Amos Binney and others by the demandants. Being a claim for a forfeiture, for an alleged breach of a condition subsequent, the words of the deed are to be taken most strongly against the grantors and in favor of the grantees.

It is a grave question whether, if the deed were clear and explicit on the face of it, and capable of but one construction, other contemporaneous written evidence, such as the votes, accepted reports, and other records of the demandants, showing the purpose they had in view in making the deed, the terms on which it was intended to be made, and the authority conferred on their agents, would have been admissible, to control such construction, and give a different effect to their deed. The court have not thought it necessary to put the decision on that ground, or to decide whether they are admissible for that purpose, although their votes may be referred to in another aspect, to show what construction the grantors put on their own deed.

The purpose of giving the deed is manifest from the deed itself, and the relations and circumstances under which it was made. The grantors had become a company, holding a quantity of land for sale, in house lots, the same having been recently transferred to them, as such land company, by the Lechmere Point Company. It would be manifestly for the interest of such a company, and tend to promote a sale of their lots, for purposes of habitation, that a provision for public worship, and schools for the education of children, should be permanently established; just as it was for their interest to appropriate land gratuitously for streets. The consideration was a nominal one, and the grant was made to five persons, in trust for themselves and for thirty or forty others named. The deed was in the common form of a deed by a corporation, under its common seal and the hand of their president, and purported to be a grant of a lot of 20,000 feet, described, bounded on three sides by streets, and on the fourth by their own land. It embraced two corner lots of 10,000 feet each. It was made to the five persons named, their heirs and assigns.

*habendum* to the several uses, and upon the several trusts, and subject to the several conditions, declarations and agree- ments thereinafter mentioned ; to wit, in trust for Atherton H. Stevens, and twenty eight others named, their heirs and assigns, together with such other persons as might associate with them for the purpose of the public worship of God, and the erection, on said premises granted, of a church or meet- ing-house for said worship, as also a house for the clergyman, and a school house. And the deed further went on to state, that the grant thereby made was upon the express condition that the grantees, or *cestuis que trust,* or some of them, should *build and finish,* within two years from the 9th of November 1822, on the lot thereby conveyed, a church or meetıng-house, for the public worship of God, and should also build and finish, within three years, a suitable dwelling-house for the clergyman, and a school house ; and in case said church oɪ meeting-house, and parsonage house, and school house should not be built on said lot and finished within the respective times named, then the land granted, with its appurtenances, was to revert to said Proprietors of the Canal Bridge.

Had this deed stopped here, it would have been at least clear and intelligible, and in conformity with the votes of the corporation, under which the deed was executed by its offi- cers. The purpose of the trust was to secure the erection of the required buildings within the times limited, with a view to the encouragement of inhabitants to purchase and settle on their lands, and thus promote their purposes as a land company having such lots for sale. The condition, as thus far expressed, was adapted to secure the accomplishment of the declared uses and purposes, and the execution of the declared trusts, by makıng the forfeiture depend upon the failure to *erect* those buildings within the times⋅ respectively limited.

But the deed contained another and distinct condition, in these words : " And this grant is upon this further condition, that the land hereby conveyed shall be forever hereafter appropriated to the maintenance and support of the public worship of God, as hereinbefore specified, and to no other

uses or purposes whatever; otherwise, the same to revert to the said corporation of the Canal Bridge, as above mentioned."

It is upon the alleged breaches of this last condition that the demandants at last rely. In the original specification of claim, breaches were assigned, of the first condition, that the grantees did not erect and build the required buildings within the times limited. But they have been waived, and it is conceded that a church edifice, a school house, and a dwelling-house suitable for a parsonage, or clergyman's house, were built within the times limited, or within the term to which the time had been extended by the grantors. The breaches relied on all consist of acts alleged to have been done by the grantees or their assignees, tending to prevent the appropriation of the whole of the granted premises directly to the support of public worship; as, for instance, by using parts of it, not adapted to or capable of being used for the direct purposes of public worship, to other purposes, by mortgaging or leasing parts of it, by which it may be diverted from such use.

This brings us directly to the consideration of the legal character and effect of this condition. It is contended by the tenants, that this last condition is inconsistent with and repugnant to the grant, the *habendum*, the trusts, and express prior condition of the deed, and is therefore void.

Upon the fullest consideration, the court are of opinion that this last condition is repugnant to the foregoing parts of the deed, and is void. It is not only another and further condition superadded to those which preceded it, but they are repugnant, and cannot both be complied with; so that a compliance with one would be a violation of the other. If the last condition requires the grantees to appropriate the entire premises exclusively to the purposes of public worship, it is impossible to comply with the other condition, to erect a school house and parsonage. If this condition does not require the grantees to appropriate the whole of the granted premises to the support and maintenance of public worship, and to no other uses or purposes whatever, then no breach has been assigned or proved.

Now, finding that the two conditions are repugnant, and cannot both be complied with, one or the other must yield; and, in determining which, we consider that the former is more favorable to the grantees, that it is most reasonable, and best adapted to carry into effect the objects and purposes of the grant; and we are of opinion that it must stand, and that the subsequent condition must be held void.

Such being, in our view, the true construction of this deed, it is satisfactory to believe that such was the construction of the grantors themselves.   When the buildings were erected and completed, as the grantees supposed, in fulfilment of the conditions of the deed, a committee was appointed on their request, to examine and report, whether the conditions had been performed.   This committee reported that they had been, and this report was accepted by vote of the demandants.   And, without laying any stress on the previous votes of the company, as evidence to control their deed and vary its construction from that which its terms would purport, we may remark that the first condition was the one apparently regarded by those votes as the one relied on and intended to be inserted, and that the last condition seems to have been inserted without the authority of any vote of the corporation, which now appears.

*Demandants nonsuit, in both actions.*